FENIX *et al.*, *Appellants*, v. FENIX'S ADMINISTRATOR.

80   27
116  499

80   27
73a 615

**Administration:** ORDER OF SALE OF REAL ESTATE, IMPEACHMENT OF. An order of sale of real estate is not such a final order as will conclude the heirs of the decedent from showing, upon the incoming of the report of sale, that there are no debts, or that there are personal assets sufficient to pay all debts, or any other fact tending to show that the order ought not to have been made.

*Appeal from Dallas Circuit Court.*—HON. R. W. FYAN, Judge.

REVERSED.

*A. S. Smith* and *F. P. Wright* for appellants.

*Smith & Krauthoff* with *Nixon & Wallace* for respondent.

MARTIN, C.—The issues in this case arise upon a motion by the widow and heirs of a decedent to set aside an order

of sale of real estate and disapprove a report of sale made by the administrator. The motion was filed in the probate court on the 12th day of February, 1879. It appears from the evidence that William L. Fenix died in 1871, leaving the real estate in controversy, and that the complainants are his children and widow. On the 1st day of September, 1871, his estate was taken in charge by Jeremiah W. Cheek, as public administrator of Dallas county, but full administration was not effected by him. James L. Southard succeeded him as administrator *de bonis non*, and as such is the party defending the motion of the widow and heirs.

On the 17th day of May, 1878, the administrator filed his application in the probate court, alleging a deficiency of personal assets to pay the debts, and asking for an order of the court authorizing him to sell the real estate now in dispute. On the same day the court made an order of publication of notice to all interested, in the usual form. This notice was published the requisite length of time. On proof of such publication the court made its order for sale of the real estate. This order was made on the 12th day of August, 1878, and after reciting publication of the notice, goes on to say: "And it being proved to the court that there is not sufficient personal estate and effects of said deceased charged with payment of debts, and not sufficient assets in the hands of said administrator to pay the debts due by said estate, it is ordered that the said James L. Southard, as such administrator, do, on the 11th day of November next" sell at the place and in the manner therein stated the said real estate. On the 11th day of February, 1879, the administrator filed a report of his sale under the order, in which he says, that he made sale of the land on the 11th day of November, 1878, to different persons for the aggregate sum of $1,114.50. On the 12th day of February, 1879, and before any action was taken on the report, the complainants herein appeared in court and according to the entry then made filed their "motion to set aside said sale of land and order for said sale, with all other proceedings

therein." This motion is in writing, and besides irregularities in the petition, order, proof of notice and other matters of form suggested therein, proceeds to set out facts tending to show that the order of sale was erroneously granted. It alleges that the former administrator received sufficient personal assets to pay all the debts due by the deceased, and that he squandered the same; and that the debts referred to in the application for the order of sale were in truth paid off by the former administrator, and that the allowances of said debts were procured by collusion between said former administrator and the parties claiming the same. It is also alleged in general terms that the present administrator is seeking and designing to defraud the complainants, and that the lands which he sold for $1,146.50 are worth $7,000.

To this motion the administrator filed an answer in writing denying everything. According to the record the parties appeared in person and by attorney, " and matters of evidence being heard, the court finds the issues for James L. Southard, administrator *de bonis non* of the estate of Wm. L. Fenix, deceased, and orders approval of sale of lands." An appeal was taken by complainants to the circuit court where, after a continuance in behalf of the administrator, the motion came on to be heard.

To sustain the issues on their part the complainants offered to prove, by the records and files relating to the administration of the estate, that the former administrator had received personal assets to the amount of $8,000, and that there were only $2,100 of debts due by the estate. They also offered to prove that the former administrator had embezzled and converted to his own use a large amount of the personal assets of the estate; and that but for said embezzlement there would have been abundance of assets to satisfy all the debts. They also offered to prove that the debts, for payment of which the sale had been ordered, had been paid off before application for the order. It was admitted by Mr. Southard that he was one of the bondsmen

of the former administrator when he took charge of the estate. To all the evidence contained in these offers the administrator objected, on the ground that the complainants could not go behind the order of sale ; that when notice was given to all parties interested in said land to appear and show cause why an order of sale of the land should not be made, and they failed to appear and show cause, they lost their day in court. It is argued that they should have appealed from the order of sale. The court sustained the objection of the administrator and excluded the evidence, and found the issues in favor of the defendant and approved the sale. From this action of the court the complainants bring their appeal.

The only question presented for decision in this statement is, whether parties interested in land ordered by the probate court to be sold, will be permitted to impeach the order after lapse of the term at which it was made, but before approval of the sale, by submitting evidence tending to prove that the facts which authorized the court in making the order are untrue. After considering this question carefully I have reached the conclusion that the action of the court must have been induced by a possible misconception of the nature of the order made by it, and the nature and scope of the proceedings in which it was made.

An administration of the estate of a deceased person, as conducted by the probate court under the laws of this State, is in the nature of a proceeding *in rem*—a single proceeding. It opens by the appointment of an officer of the court who takes charge of the assets of the estate and makes public proclamation of the fact to the end that all persons having claims against the estate may come forward and assert them against the property in his charge. It terminates by the final discharge of this officer, after another publication of notice to that effect, by which all persons in any way interested in the estate may come forward and object to the transactions of the administration which is about to close. These notices constitute the process to the

world upon which rest the conclusive and binding effect of the proceeding. Originally this proceeding concerned only the personal estate of the decedent, while the realty vested immediately in the heirs and devisees. The realty still vests in the same way, but subject to be called upon by the administrator in the event of a deficiency of personal assets. To the extent of this recourse upon it the realty has been added to the available assets of the estate.

The conditions upon which resort to the realty is authorized, as well as the method to be pursued in doing it, are particularly set out in the statute of administration. It will be found on examination that this method constitutes a special proceeding by itself springing out of the necessity of more assets than are furnished by the personal estate, and is subordinate to the chief purpose of the administration proceeding of which it forms an inherent part; and in determining its scope and bearing this feature ought not to be lost sight of. This special proceeding consists of certain things required to be done which constitute necessary and consecutive steps all leading to the same result, and which are known as the petition, order of publication, proof of publication, order of sale, act of sale, report of sale and approval of sale. It is the order approving the sale which terminates the proceeding and vests the title of the land in the purchaser, and the title of the purchase money in the administrator for the purpose of paying the debts of the estate. This proceeding is but one thing as a whole, commencing with the petition and ending with the order of approval of sale. The order of sale is a necessary, but only an intermediate step in the proceeding. If there is no order there can be no sale, and consequently nothing for an order of approval to rest upon. While the order of sale is a necessary link in the proceeding, it is by no means the final one, and standing by itself it effects nothing. The proceeding must go on to a sale and to an approval of sale to give any efficacy to the order of sale.

When, therefore, a party interested in the land appears

in court after sale of the land and before the court has made judgment of approval, and objects to the approval of sale and to the order of sale, he is only objecting to an intermediate step in a pending and unfinished proceeding to which he has been made a party only by constructive notice. He ought not to be met with the statement that he is concluded by the order of sale from going back of its date, when the order itself is not a final and concluding judgment in the proceeding. That an order of sale before order of approval is neither final or conclusive, is apparent from the language of the statute, which declares that " if such report and proceedings of the executor or administrator be not approved by the court, his proceedings shall be void, and the court may order a new sale, upon which the same proceedings shall be had as upon the original." R. S. 1879, § 168. Thus it seems that a refusal to approve the report avoids the order of sale itself.

Now it seems to me that the conclusion is irresistible that when the time comes to approve the sale, which act of the court gives to the whole proceeding its validity and effect, the court has the right to review the whole proceeding about to terminate before it, and refuse to give to it the effect of a judicial sanction for any good and sufficient reason; although that reason may reach back to impeach the order of sale itself. Not only has the court this right, but it is in the nature of a duty which cannot be escaped by pretending that it is concluded by its own order which constitutes only an intermediate step in the proceeding pending before it. Under our decisions, if there are sufficient personal assets in the hands of the administrator to pay the debts, the court has no authority to order a sale of the realty. If the assets have been wasted by the administrator, then the creditors must, in the first instance, look to the bond of the administrator for a satisfaction of their demands before they can ask for a sale of the realty. *Merritt v. Merritt*, 62 Mo. 150. A resort to the bond of the administrator is only a part of their obligation to exhaust

the personal estate before asking for a sale of the realty. If the debts have been paid or have no existence except by virtue of erroneous or fraudulent allowances, the order for sale of the realty ought not to be made, and if made ought to be vacated and set aside. Now while it is true these heirs were, in a legal sense, informed of the application for the order of sale, yet it was only by a constructive notice published in some newspaper. When the order was made they were not actually but only constructively present. It is the practice of courts conducting such proceedings as these to ascertain the reasonable objections of all parties interested in their result, provided they appear before the proceedings are finally closed. The manifest justice of this practice can be easily guarded by the court against any possible inconvenience and abuse.

In the case of *Henry v. McKerlie,* 78 Mo. 416, we had occasion to examine at some length the conclusive effect of proceedings for the sale of real estate by administrators, when they had culminated in a final judgment of approval, and we found that they are now regarded as binding on all parties interested in them, and cannot be attacked in collateral proceedings for mere irregularities any more than the judgments in other courts and proceedings. The authorities in support of this principle need not be cited in support of the action of the lower court in refusing to hear the appellants in their attack on the order of sale. They were interested in the land. They appeared and made their attack in the proceedings as they were conducted before the court and before these proceedings had culminated in a final judgment binding on them or any one else.

Under these views of the case it becomes necessary to reverse the judgment and remand the cause for trial. All concurring, it is so ordered.